

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-8-2005

# Wilce v. Director OWCP

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3998

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Wilce v. Director OWCP" (2005). *2005 Decisions.* Paper 878.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/878

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-3998
_____

CATHERINE WILCE,

Petitioner

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
United States Department of Labor,

Respondent
_____

On Petition for Review from an
Order of the Benefits Review Board,
United States Department of Labor
(Benefits Review Board No. 04-0279 BLA)
_____

Submitted Under Third Circuit LAR 34.1(a)
July 1, 2005

Before:  NYGAARD, SMITH and FISHER, *Circuit Judges.*

(Filed: July 8, 2005)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Petitioner Catherine Wilce seeks review of the decision and order of the Department of Labor, Office of Workers' Compensation Programs ("OWCP"), Benefits Review Board ("Board"), dated September 30, 2004. We will deny the Petition for Review, and focus principally herein on the rationale for our decision.

I.

Petitioner is the widow of a former miner who had been awarded black lung benefits in 1990 and who died in 1991. Following her husband's death, Petitioner filed a survivor claim for benefits, which was finally denied on November 13, 1992, based on a medical opinion that black lung disease did not cause her husband's death. Almost four years later, in July 1996, Petitioner filed a second "duplicate" claim, accompanied by an amended death certificate and coroner letter purporting to add anthracosis as a significant contributing factor of death. The duplicate claim was denied because black lung disease was not the cause of death, and alternatively, because 20 C.F.R. § 725.309(d) dictated denial of the duplicate claim. This regulation ("duplicate claims regulation" or "regulation") allows a miner to file a duplicate claim where he or she can establish a material change in his or her condition, but bars a survivor from filing a duplicate claim unless it is a request for modification that is based only upon an allegation of a mistake in

2

a determination of fact, and meets the one-year time requirements of 20 C.F.R. § 725.310. *See* 20 C.F.R. §§ 725.309(d), 725.310(a).[1]

Petitioner's duplicate claim stayed alive through repeated requests for modification and related appeals, each of which resulted in a denial of her claim under the duplicate claims regulation. In the context of a request for modification filed December 3, 2002, Petitioner sought discovery from the Director, OWCP, as to how many black lung claims were processed between 1974 to 2003, and how many were filed by men and in what capacity (i.e., miner or surviving spouse) as compared to those filed by women and in what capacity. The Director objected to the discovery as onerous and offered to stipulate that:

> virtually all, if not all, duplicate survivor claims filed by surviving spouses
> of deceased miners (such as the duplicate survivor's claim in the instant
> case) are filed by women rather than men, while virtually all, if not all,
> subsequent living miner's claims filed by living miners are filed by men
> rather than women.

A. 53. Petitioner rejected the stipulation and filed a motion to compel discovery. The Administrative Law Judge (ALJ) denied her motion, reasoning that the discovery sought was irrelevant to the claim before him as he lacked the authority to rule on the regulation's constitutionality.[2] The ALJ also denied the duplicate claim as barred by the

---

[1]20 C.F.R. § 725.309(d) was amended in 2000. This case implicates the prior version of the regulation. *See* 20 C.F.R. § 725.309(d) (1999).

[2]The ALJ did, however, accept the proposed stipulation as part of the record in an effort to aid Petitioner on appeal to a tribunal capable of entertaining the constitutional challenge. A. 33.

regulation. On appeal, the Board upheld the regulation against the equal protection challenge. A. 5-6. It also affirmed denial of the discovery motion and of the duplicate claim. A. 4, 6-7.

## II.

We have jurisdiction pursuant to 30 U.S.C. § 932(a), *Lombardy v. Director, OWCP*, 355 F.3d 211, 213 (3d Cir. 2004), and review Board decisions for errors of law and adherence to the Board's own standard of review. *Id.* We exercise plenary review over matters of law, such as the constitutionality of a regulation. *See id.*

## III.

Petitioner challenged the duplicate claims regulation as discriminatory against women in violation of the equal protection guarantee applicable to the federal government through the Fifth Amendment. *See Bolling v. Sharpe*, 347 U.S. 497 (1954). The Board applied rational basis review and concluded that "[b]ecause there can be no 'change' in a deceased miner's condition, ... it is rational to bar duplicate claims filed by a survivor." A.6. Petitioner assigns two errors to this analysis. First, she contends that "intermediate" scrutiny as opposed to rational basis review applies to this gender-based classification and second, that the regulation fails under either standard. We disagree.

The duplicate claims regulation distinguishes between pending and denied claims and between miner's and survivor's claims. Under certain circumstances and regardless of gender, children, parents, brothers and sisters may be entitled to survivor benefits. *See*

4

20 C.F.R. §§ 725.218-725.226. While it may be true that more women file survivor claims, the regulation itself is facially neutral. As the Supreme Court has held, an otherwise facially neutral classification is not subject to the heightened scrutiny applicable to gender-based classifications merely because the classification has a disparate impact on women. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993); *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256 (1979). Thus, the Board appropriately applied rational basis review.

The equal protection guarantee directs that all similarly-situated persons be treated alike. To survive rational basis review, a legislative classification need only be rationally related to a legitimate government interest. *Heller v. Doe*, 509 U.S. 312 (1993). The equal protection guarantee "is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Fitzgerald v. Racing Assoc. of Central Iowa*, 539 U.S. 103, 107 (2003) (internal quotation omitted). The duplicate claims regulation readily survives scrutiny under rational basis review.

Miner claimants and survivor claimants simply are not similarly-situated. "[P]neumoconiosis is a latent and progressive disease," such that "a miner's condition may worsen over time." *Coleman v. Director, OWCP*, 345 F.3d 861, 863 (11th Cir.

5

2003). The regulation has been structured to reflect this reality and accordingly, it allows a miner whose first claim for benefits has been denied to pursue a later claim provided the miner can establish a change in the conditions of entitlement. A deceased miner's condition, however, "is not subject to change," *see id.*, and thus, as the Eleventh Circuit explained in *Coleman*:

> Section 725.309(d) reflects the Department's interest in administrative finality and res judicata. It encourages a survivor ... to marshal expeditiously all of the evidence and arguments in support of her claim that her husband's death was due to pneumoconiosis. Such evidence may include medical evidence concerning the miner's condition prior to, and at the time of, his death, medical opinion evidence regarding the miner's cause of death and any relevant lay testimony. Assuming that the [Board] has finally denied a survivor's initial claim, the regulation allows the surviving spouse, within one year after the final denial of benefits, to uncover or to generate new evidence in support of her claim, or to otherwise prove that the denial of benefits constituted a mistake in a determination of fact. If a survivor fails to act within the one-year period allowed for a modification petition, the [Board] must deny any later claim.

345 F.3d at 864. The government has a legitimate interest in both permitting miners to file duplicate claims in the face of changed circumstances and in administrative finality and the expeditious processing of survivor claims. The legislative classification furthers these goals by allowing duplicate claims only when the relevant conditions of entitlement are capable of change.[3] The Board correctly upheld the regulation as constitutional.

---

[3]The regulation does not, as Petitioner vehemently argues, permit miner's claims (as opposed to survivor's claims) to proceed indefinitely. Under the pre-2000 version of 20 C.F.R. § 725.309(d), a miner's duplicate claim would only be entertained where the commissioner determined that there has been a "material change in conditions" or the later claim is a request for modification and the requirements of § 725.310 are met. This

6

IV.

Petitioner contends the Board committed reversible error in affirming the ALJ's denial of her motion to compel discovery. As the desired discovery related solely to her constitutional challenge, which we hold the Board appropriately resolved against her, the discovery is now unnecessary and the issue thus moot. We note, however, that the Director's stipulation gave Petitioner all the evidence she conceivably could have needed to support the factual predicate of her claim – i.e., that survivor claims are typically filed by women.

Accordingly, we will deny the Petition for Review.

---

limitation on miner's duplicate claim is made even more explicit in the amended version. *See e.g.*, 20 C.F.R. § 725.309(d)(2) (2005). Additionally, we do not understand the Director to be arguing that the fiscal status of the Black Lung Disability Trust Fund would somehow justify discrimination against survivor claimants or women. The regulation discourages duplicate claims not based on a material change in the conditions of entitlement; the government has a legitimate interest in avoiding such claims, regardless of the Fund's fiscal status.