[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10074
Non-Argument Calendar
_____

Agency No. BRB-2012-0559-BLA


FLEETWOOD TRUCKING COMPANY, INC.,

Petitioner,

versus

DIRECTOR, OWCP,
JAMES GARY WARREN,

Respondents.


_____

Petition for Review of a Decision of the
Office of Workers Compensation Programs
_____

(September 30, 2014)

Before ED CARNES, Chief Judge, TJOFLAT and JORDAN, Circuit Judges.

PER CURIAM:

Fleetwood Trucking Company appeals the Benefit Review Board's (BRB) decision affirming an Administrative Law Judge's (ALJ) grant of benefits under the Black Lung Benefits Act.

I.

James Gary Warren is a former truck driver who spent years hauling coal for various companies in Alabama. He was forced to stop working in 2009 when he was diagnosed with black lung disease. On October 23, 2009, Warren filed with the Department of Labor (DOL) a claim for black lung benefits. As part of that claim, he completed a standard DOL questionnaire that requested information about his employment history. Warren wrote that he had been self-employed as a truck driver for his own business — Gary Warren Trucking — before he was forced to stop working. During the time that he was self-employed, Warren worked on an independent-contractor basis hauling coal for various companies. He used his own truck to transport the coal, and he did not have a supervisor. Before he worked as an independent contractor, Warren was employed by Fleetwood Trucking Company. When he worked for Fleetwood, he used the company's trucks and equipment to haul coal, his work was supervised by Fleetwood's owner, and the company deducted payroll taxes from his wages.

On January 12, 2010, a DOL claims examiner sent a letter to Fleetwood's owner, Lee Sellers. The letter notified Sellers that Fleetwood might be the

2

"responsible operator" for Warren's claim,[1] and it asked Fleetwood to submit financial information that would allow it to determine whether the company would be financially able to assume liability for the payment of Warren's benefits.  The letter also stated, in bold print, that failure to respond within 30 days would result in a finding that Fleetwood was the proper "responsible operator" and was financially able to assume liability for any benefits Warren was entitled to receive.  See 20 C.F.R. § 725.408(a).  Accompanying the letter was a "notice of claim," which explained how Fleetwood had been identified as the potential "responsible operator" and included Warren's self-reported employment history.  Fleetwood never responded to the letter.

On August 31, 2010, the same DOL claims examiner issued a "schedule for the submission of additional evidence" related to Warren's claim.  A copy was mailed to Fleetwood and was received by the company on September 9, 2010.  The schedule indicated that Fleetwood had been designated as the responsible operator liable for the payment of benefits.  Pursuant to DOL regulations, it stated that Fleetwood had until September 30, 2010, to accept or reject the designation.  If Fleetwood failed to respond, it would be deemed to have conceded its status as the

---

[1] The Black Lung Benefits Act provides benefits to coal miners who are "totally disabled due to" black lung disease, 30 U.S.C. § 901(a), and regulations provide that in most circumstances the responsible operator for the payment of benefits is the worker's most recent coal-related employer.  20 C.F.R. §§ 725.494, 725.495.  Neither side disputes that Warren could not have been the "responsible operator" based on his time working as an independent contractor.

"responsible operator" and to have "waive[d] its right to contest its liability in any further proceedings." See 20 C.F.R. § 725.412(a)(2). Though Fleetwood did eventually respond to the DOL's notice, it did so more than three weeks after the September 30 deadline.

Warren's claim was referred to an ALJ for a hearing. After that hearing, the ALJ determined that Warren had established entitlement to black lung benefits. The judge also found that Fleetwood could not challenge its designation as the "responsible operator" liable for those benefits because it had failed to respond to the DOL's notices and failed to submit evidence within the timeframes provided for in DOL regulations. Fleetwood appealed the ALJ's decision to the BRB, asserting that it was not Warren's last coal-related employer. It also contended that the DOL had failed to sufficiently investigate whether the most recent company Warren had worked for as an independent contractor should be the responsible operator. The BRB affirmed the ALJ's determination. It found that the ALJ's decision was supported by substantial evidence and that Fleetwood had waived its right to contest liability by failing to do so within the prescribed time periods.

## II.

Fleetwood raises several arguments on appeal. First, it contends that it was denied due process and the BRB's decision must be reversed because the DOL violated its own regulations by failing to adequately investigate whether Fleetwood

4

was the proper "responsible operator."  See Gov't of Canal Zone v. Brooks, 427

F.2d 346, 347 (5th Cir. 1970) ("It is equally well established that it is a denial of

due process for any government agency to fail to follow its own regulations

providing for procedural safeguards to persons involved in adjudicative processes

before it.").[2]  Second, it asserts that the DOL regulations on which the ALJ relied

to conclude that Fleetwood had conceded liability should not apply because the

DOL failed to perform an adequate investigation.[3]  Those arguments present legal

questions that we review de novo.  Coleman, 345 F.3d at 865.

Fleetwood's arguments necessarily fail because their underlying premise —

that the DOL failed to perform an adequate investigation — is flawed.  Under DOL

regulations, a person seeking black lung benefits must provide the DOL with "a

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[3] Fleetwood also asserts that its due process rights were violated because the BRB's decision was based on a presumption that Fleetwood was the responsible operator, which "relieve[d] the Government of having to adduce . . . evidence" that Fleetwood actually was the responsible operator.  We find Fleetwood's argument meritless.  The BRB's decision did nothing to relieve the DOL of its obligation to find evidence concerning the identity of the responsible operator for Warren's claim.  The administrative record demonstrates that the DOL relied on probative evidence to identify the responsible operator, supplied that evidence to Fleetwood, and afforded Fleetwood multiple opportunities to dispute the designation.  Fleetwood failed to take advantage of those opportunities.  As the respondents note, Fleetwood "was not deprived of due process" but instead "simply neglected to exercise its rights under the regulations."  See also Coleman v. Dir., OWCP, 345 F.3d 861, 865 (11th Cir. 2003) (finding no due process violation where petitioner was given "notice and an opportunity to respond to the Director's argument that her claim was legally barred"); Nash v. Auburn Univ., 812 F.2d 655, 661 (11th Cir. 1987) ("An elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

complete and detailed history" of his employment.  20 C.F.R. § 725.404(a).  That employment history forms the foundation of the DOL's investigation and enables it to identify a potentially liable operator for the applicant's claim.  Id. § 725.407(a).  The regulations do not identify any specific steps that the DOL must take to determine the potentially liable operator.

The administrative record makes clear that the claims examiner engaged in a thorough investigation.  She interviewed Warren on several occasions to determine the nature of his work while he was self-employed and while he was working for Fleetwood.  She asked Warren whether he had a supervisor while he was working as an independent contractor.  See id. § 725.493(a)(1) (noting that an operator qualifies as a former employer of the claimant if it "retain[ed] the right to direct, control, or supervise the work performed by" the claimant).  The examiner also corroborated Warren's employment history by reviewing his social security earnings record.  That record confirmed that Fleetwood had been Warren's last employer before he became self-employed.  Finally, the claims examiner also sought information directly from Fleetwood to determine whether it was the responsible operator.  Fleetwood never responded to that request for information.  In light of all the evidence, the DOL did not fail to comply with its own regulations and it sufficiently investigated whether Fleetwood was the liable operator for Warren's claims.

For the reasons explained, the BRB's decision is **AFFIRMED**.